IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:10-CV-62-D

| | |
|---|---|
| DEBRA LAIRD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **MEMORANDUM &** |
| | ) **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

This matter is before the Court upon the parties' cross Motions for Judgment on the Pleadings. (DE's 28 & 30). The time for the parties to file any further responses or replies has expired. Accordingly, the matter is now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), this matter has been referred to the undersigned for the entry of a Memorandum and Recommendation. (DE-32). For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-28) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-30) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Supplemental Security Income ("SSI") on February 12, 2007 alleging that she became unable to work on April 10, 2002. (Tr. 13). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge

1

("ALJ"), who determined that Plaintiff was not disabled during the relevant time period in a decision dated November 5, 2009. *Id.* at 13-21. The Social Security Administration's Office of Hearings and Appeals ("Appeals Council") denied Plaintiff's request for review on October 14, 2010, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on November 23, 2010. (DE-4).

**<u>Standard of Review</u>**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is ... such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." <u>Craig</u>, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by

substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

**Analysis**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).
>
> Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 12, 2007. (Tr. 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: 1) major depression; 2) post traumatic stress disorder ("PTSD"); and 3) a personality disorder. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id.* Based on the medical record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with certain exceptions. *Id.* at 16.

The ALJ then proceeded with step four of his analysis and, based on the testimony of a vocational expert ("VE"), determined that Plaintiff was able to perform her past relevant work as a commercial cleaner. *Id.* at 20. Accordingly, the ALJ determined that Plaintiff was not under a disability at any time through the date of his decision. *Id.* at 21. These determinations were supported by substantial evidence, a summary of which now follows.

Dr. Rajadorai Calnaido examined Plaintiff on March 19, 2002. *Id.* at 244. Plaintiff's global assessment of functioning ("GAF") was 55[1] and she was characterized as having a "mood disorder, not otherwise specified" as well as PTSD. *Id.* During this examination, Plaintiff demonstrated no evidence of thought disorder and her mood and affect were congruent. *Id.* She also demonstrated mild anxiety and depression, although there were no psychotic symptoms. *Id.* Again on May 20, 2002, Plaintiff's GAF was 55. *Id.* at 245. Dr. Calnaido noted that Plaintiff was "not very specific as to her difficulties." *Id.* Plaintiff was tolerating her medications well. *Id.* Her anxiety and depression were described as "mild to moderate." *Id.* Likewise, on July 25, 2002, Plaintiff demonstrated no evidence of thought disorder or psychotic disturbance. *Id.* at 246. On November 29, 2004, it was noted that Plaintiff had "completed [a] significant portion of [her] treatment goals." *Id.* at 249.

Plaintiff was diagnosed with anxiety disorder by Dr. Earl J. Crosswright on August 27, 2003. *Id.* at 254-259.

Dr. Douglas Fraser treated Plaintiff from November 1, 2002 through April 19, 2004. *Id.* at 256-263. During a November 1, 2002 evaluation Plaintiff stated that her "medication ha[d] been

---

1 The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM–IV"), 32. A GAF score of 51-60 indicates moderate difficulty in social, occupational, or school functioning. *Cf.*, Day v. Astrue, 2011 WL 2604896, *3, fn. 4-5 (W.D.Va. April 26, 2011).

4

very helpful for her depression and anxiety." *Id*. at 260. Plaintiff was diagnosed with bipolar disorder, PTSD, and opioid dependency. *Id*. at 262. Her GAF was 55. *Id*. On January 20, 2003 Plaintiff stated she was "doing [a] little better" and that she desired no changes in her medications. *Id.* at 258. Likewise, on April 19, 2004 Dr. Fraser stated that Zoloft was working well for Plaintiff. *Id.* at 256.

Plaintiff was examined by Dr. Elaine Bailey on August 30, 2004. *Id.* at 347. Her symptoms included: "crying and tearfulness, . . . insomnia, . . . negative thoughts, depression, hopelessness, anhedonia, withdrawal, anxiety, worry and panic, irritability and anger, agitation and restlessness, [and] avoidance of social situations in crowds . . . ." *Id.*

On August 11, 2004 Plaintiff was examined by Dr. V.F. Dillon, Sr. *Id*. at 271. Plaintiff's mood was entirely normal with no signs of depression or mood elevation. *Id*. at 272. Likewise, there were no signs of anxiety. *Id*. On September 1, 2004, Plaintiff demonstrated "no serious mental status abnormalities." *Id*. at 269. No signs of depression, anxiety or mood elevation were observed. *Id*. Dr. Dillon stated on November 24, 2004 that Plaintiff's behavior had been stable and uneventful. *Id*. at 266. Again, Plaintiff did not demonstrate depression, anxiety or mood elevation. *Id*. Despite these findings, Dr. Dillion completed a medical verification form on November 24, 2004 stating that Plaintiff was unable to work because she was experiencing panic attacks. *Id.* at 349. Regardless, on May 18, 2005, Plaintiff again did not demonstrate any signs of anxiety or depression. *Id.* at 265. She reported no side effects from her medications and her GAF was 65. *Id.* On July 5, 2005, Plaintiff reported no side effects from her medications and specifically denied symptoms of psychosis, depression, and anxiety. *Id*. at 264. Dr. Dillon opined that Plaintiff exhibited no serious mental abnormalities, no depression or mood elevation, no signs of cognitive difficulty, no signs of anxiety, a normal attention span, and intact insight and

5

judgment. *Id.* Plaintiff's GAF was 80. *Id.*

Plaintiff's RFC was assessed on April 18, 2005. *Id.* at 371. It was determined that Plaintiff's impairments did not precisely satisfy the diagnostic criteria for Listings 12.02, 12.04, and 12.06. *Id.* at 372-376. She had moderate difficulties in maintaining social functioning, although her other functional limitations were only mild. *Id.* at 381. Likewise, Plaintiff was only moderately limited in her ability to: 1) maintain attention and concentration for extended periods; 2) work in coordination with or proximity to others without being distracted by them; 3) complete a normal workday and workweek; 4) interact appropriately with the general public; 5) accept instructions and respond appropriately to criticism from supervisors; and 6) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* at 385-386. Plaintiff was not significantly limited in every other assessed ability. *Id.*

Dr. Robert Stainback assessed Plaintiff's RFC on October 31, 2005. He determined that Plaintiff was moderately limited in her ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) interact appropriately with the general public; and 5) set realistic goals or make plans independently of others. *Id.* at 353-354. Plaintiff was not significantly limited in every other assessed ability. *Id.* It was also determined that Plaintiff's impairments did not precisely satisfy the diagnostic criteria for Listings 12.02, 12.04, and 12.06. *Id.* at 358-362. According to Dr. Stainback, Plaintiff had mild restrictions in her activities of daily living, as well as mild difficulties in maintaining concentration, persistence and pace. *Id.* at 367. With regard to maintaining social functioning, Plaintiff had moderate limitations. *Id.*

On January 14, 2007, Plaintiff applied for a job at a Dollar General store. *Id.* at 322.

Plaintiff was examined by Dr. John W. Keller on May 30, 2007. *Id.* at 279. He

diagnosed Plaintiff with PTSD and "major depression, severe", concluding that Plaintiff needed to continue her therapy and psychotropic medication *Id.* at 281. Finally, he also noted that Plaintiff "cannot stand being around people, and this will interfere with a number of potential employers." *Id.*

Dr. James Meyers assessed Plaintiff's RFC on June 20, 2007. *Id.* at 282-295. He determined that Plaintiff's depression did not precisely satisfy the diagnostic criteria for Listing 12.04. *Id.* at 285. Likewise, he determined that Plaintiff's PTSD did not precisely satisfy the diagnostic criteria for Listing 12.06. *Id.* at 287. Plaintiff had no restrictions in her activities of daily living and only mild difficulties in maintaining social functioning. *Id.* at 292. However, Plaintiff demonstrated moderate difficulties in maintaining, concentration, persistence and pace. *Id.* According to Dr. Meyers, Plaintiff was also moderately limited in her ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain concentration for extended periods; and 4) interact appropriately with the general public. *Id.* at 296-297. Plaintiff was not significantly limited in every other assessed ability. *Id.*

On September 17 and 18, 2007, Dr. Lee Reback assessed Plaintiff's RFC. He also determined that Plaintiff's impairments did not satisfy Listings 12.04 and 12.06. *Id.* at 303-305. During this assessment, Plaintiff was deemed mildly restricted in her activities of daily living. *Id.* at 310. She also had moderate difficulty in maintaining social functioning and maintaining concentration, persistence and pace. *Id.* According to Dr. Reback, Plaintiff was moderately limited in her ability to: 1) carry out detailed instructions; 2) maintain attention and concentration for extended periods; 3) interact appropriately with the general public; 4) accept instructions and respond appropriately to criticism from supervisors; and 5) respond appropriately to changes in the work setting. *Id.* at 314-315. Plaintiff was not significantly limited in every

7

other assessed ability. *Id.*

Plaintiff's GAF was 45 on January 30, 2007. *Id.* at 330. Following a mental status examination she was described as agitated and having suicidal ideation. *Id.* at 329. On April 2, 2007, Dr. Lynn McKim stated that Plaintiff was not able to work due to her mental health issues. *Id.* at 320. Both Dr. McKim and Dr. Antonio Larranaga assessed Plaintiff's RFC on December 19, 2007. *Id.* at 318-319. She was deemed to have moderate restrictions in her activities of daily living. *Id.* at 318. In addition, they determined that Plaintiff would have marked difficulty in maintaining social functioning. *Id.* They opined that Plaintiff would have frequent deficiencies in concentration, persistence and pace resulting in failures to complete tasks in a timely manner. *Id.* Likewise, Plaintiff had marked limitations in her ability to: 1) respond appropriately to supervision in a work setting; 2) respond appropriately to co-workers in a work setting; and 3) perform simple tasks in a work setting. *Id.* at 318-319. She was moderately limited in all other assessed abilities. *Id.* According to Dr. McKim and Dr. Larranaga, Plaintiff stopped working in 1999 and was presently disabled from full-time continuous employment. *Id.* at 319. Both doctors noted that Plaintiff suffered no side-effects from her current medications. *Id.*

Dr. Larranaga provided treatment for Plaintiff from February 28, 2007 until August 13, 2008. *Id*. at 389-412. On several occasions he noted that Plaintiff had: 1) normal speech; 2) unremarkable thought process; 3) euthymic mood; 4) unremarkable thought content; and 5) appropriate affect. *Id*. at 399, 403, 405, 407, 409, 411. No side-effects were noted regarding any of Plaintiff's medications. *Id.* He also rated Plaintiff's GAF at 70 on multiple occasions, and not lower than 60 several other times. *Id*. at 398, 402, 404, 406, 408, 410. Plaintiff demonstrated racing thoughts on March 28, 2007 and her mood was described as "sad." *Id*. at 397. On May 23, 2007, Dr. Larranaga observed that Plaintiff had racing thoughts, but again, her mood was

8

otherwise euthymic. *Id.* at 403.

On January 12, 2009, it was noted that Plaintiff had been off her medications for three months. *Id.* at 475. Her mood was depressed and her affect was sad. *Id.* However: 1) her thought process was goal oriented and logical; and 2) she demonstrated good judgment. *Id.* Likewise, she was described as "stable enough to await an appointment with her primary care physician to be started on her medications again." *Id.* Plaintiff's GAF was 50. *Id.* at 476.

From February 25, 2009 until August 25, 2009 Plaintiff received counseling from Health Service Personnel, Inc. *Id.* at 413-445. On February 25, 2009, Plaintiff's GAF was 50. *Id.* at 417. On April 22, 2009, Plaintiff noted that she had "been off her meds for about [seven] months." *Id.* at 414. She indicated that these medications improved her symptoms. *Id.* On May 27, 2009, Plaintiff exhibited mild affect, seemed less anxious and demonstrated an improved mood. *Id.* at 441. Plaintiff was diagnosed with a non-specified depressive disorder and her GAF was 55. *Id.* Plaintiff stated on May 22, 2009 that she was "doing better on Lexapro." *Id.* at 436. Dr. William Mann opined that Plaintiff likely overstated the weight gain caused by her medications. *Id.* During the May 22, 2009 examination, Plaintiff demonstrated: 1) normal speech; 2) "good" mood; and 3) euthymic affect. *Id.* at 436. Her GAF was 65 and "clear improvement" was noted in her depressive symptoms. *Id.* Several times during her treatment, Plaintiff reported: fewer or no flashbacks or nightmares; no suicidal ideation; and fewer outbursts of anger *Id.* at 443-445.

Between May 5, 2009 and September 2, 2009, Plaintiff received treatment for a shoulder injury. *Id.* at 448-473. Although she was not treated or examined by a psychologist or psychiatrist, on two occasions Plaintiff demonstrated normal affect. *Id.* at 460, 467.

Plaintiff testified during the hearing in this matter. She stated that she received treatment

9

for PTSD, and that her symptoms were mood swings and crying spells. *Id.* at 39. Her PTSD results from being sexually molested as a child. *Id.* In addition, Plaintiff noted that she had difficulty concentrating and experienced anxiety attacks. *Id.* at 39-40. Plaintiff also noted that she has difficulty sleeping. She also testified that she had suicidal thoughts in the past. *Id.* at 41. Furthermore, Plaintiff indicated that she had little energy and that she usually does not "feel like doing anything." *Id.* She asserted that her condition was not improving but getting worse. *Id.* at 46.

Finally, the VE testified that Plaintiff could perform her past relevant work as a commercial cleaner. *Id.* at 46-49.

Based on this record, the ALJ made the following specific findings:

> The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. In activities of daily living, the claimant has mild restriction as testimony indicates she does some chores in the mobile home where she lives with her daughter and her sister and brother-in-law, including doing laundry and cooking, reading, watching television, and going grocery shopping with her sister. In social functioning, the claimant has moderate difficulties as she testified she prefers to be by herself and only socializes for very short periods of time with a few friends in her neighborhood. With regard to concentration, persistence or pace, the claimant has moderate difficulties due to her mental status. As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of

decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis . . .

 . . .claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with additional limitations to simple, routine, repetitive tasks, with only occasional contact with co-workers and no dealing with the public.

The medical evidence shows the claimant does not have a severe impairment affecting her ability to engage in exertional activities at the medium level of exertion, sitting up to six hours and standing and walking up to six hours in an eight hour work day, and lifting and carrying and pushing and pulling up to 25 pounds frequently and 50 pounds occasionally. While the claimant was diagnosed with adhesive capsulitis in May 2009, by July 10, 2009, she had met her physical therapy goals (Exhibit 22F). The remaining evidence of record does not show the claimant has an impairment affecting her ability to engage in at least medium work activity . . .

[The medical] records show the claimant is limited to simple, routine, repetitive tasks, with only occasional contact with co-workers and no dealing with the public. This assessment is based on the evidence of record pertaining to the claimant's mental health showing that when she takes her medication as directed, her mental status improves with GAF scores noted to be 70 on examination in June and August 2008. A GAF of 70 indicates an individual is only experiencing mild symptoms of a depressed mood or some difficulty with social functioning with general functioning not significantly affected. While it is recognized the claimant has had GAF scores from 55 to 65, the evidence shows that with medication management and therapy, the claimant's mental status improves. Repeat mental status

examinations show the claimant has exhibited appropriate behavior, intact associations, logical thinking, appropriate thought content, intact cognitive functioning, intact memory, full orientation, intact social judgment, no signs of hyperactive or attention difficulties and good judgment. These findings show the claimant's mental status would not preclude her from engaging in all forms of work activity. As a result of her mental status, the claimant is limited to no more than simple, routine, repetitive tasks where she would not have to perform more than unskilled work activity. The claimant is also limited to only occasional contact with co-workers and no dealing with the public as a result of her personality disorder which has been manifested when the claimant is stressed in a social situation around other people . . .

 . . . although the evidence shows that the claimant has a medically determinable impairment that could reasonably be expected to produce some of the symptoms alleged, the evidence does not support the claimant's allegations of the intensity and persistence of such symptoms. Specifically, the claimant testified she is unable to work due to her mental status, including having mood swings, crying spells, appetite changes, sleep difficulties, decreased energy and having conflicts with other people. The claimant testified she continues to be involved in mental health treatment. The claimant stated she lives in her sister's mobile home and daily activities for the claimant were reported as taking care of her nine year old daughter, doing laundry for herself and her daughter, cooking, reading, visiting with neighbors only rarely, and going grocery shopping with her sister.

While it is recognized the claimant has symptoms associated with her mental impairments, the evidence shows these symptoms can be controlled and have been controlled with medication management. The evidence shows the claimant has not always been compliant with medication management but when the claimant takes her medication as directed, she has exhibited appropriate behavior, intact associations, logical thinking, appropriate thought content, intact cognitive functioning, intact memory, full orientation, intact social judgment, no signs of hyperactive or attention difficulties and good judgment. Additionally, the claimant's GAF improves to the extent that only mild mental status difficulties are present. The claimant has not alleged any significant side effects from medication she takes, neither has she alleged that medication has not improved her symptoms. The claimant's daily activities show that she is able to engage in normal, everyday tasks, including caring for her daughter, doing household chores, reading, and going grocery shopping. The claimant has not been restricted from engaging in normal daily activities or from engaging in unskilled work activity by all examining physicians. The evidence shows the claimant submitted an application for work on at least one occasion, indicating she was willing and able to engage in work activity. The

evidence also shows the claimant stopped work in 1999 when she was pregnant with her daughter and did not stop working due to other health issues. The claimant did not testify she was experiencing significant pain or other symptoms resulting from a severe physical impairment. For these reasons, the claimant's subjective allegations are not considered fully credible.

The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. While one examining physician, Dr. Larranga, reported the claimant was not able to work as he noted the claimant had moderate to marked levels of work-related restrictions, additional records from Dr. Larranga show the claimant had an appropriate affect, good sleep, normal thought processes and content, no hallucinations or delusions, good attention and concentration, normal cognition and memory, and good insight and judgment, with GAF scores ranging from 65-70, with 70 noted on examinations on June 18,2008, and August 13, 2008, with medication management. With medication management, the evidence shows the claimant's mental status would not preclude her from engaging in unskilled work activity and the opinion of Dr. Larranga is not given great weight as his own records show improvement in the claimant's mental health.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment . . .

. . . The claimant is capable of performing past relevant work as a commercial cleaner.

(Tr. 15-20)(emphasis in original omitted).

The Court hereby finds that there was substantial evidence to support each of the ALJ's conclusions. Moreover, the ALJ properly considered all relevant evidence, including the evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis for his resolutions of conflicts in the evidence. Plaintiff's argument relies primarily on the contention that the ALJ improperly weighed the evidence. However, this Court must uphold

13

Defendant's final decision if it is supported by substantial evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, her claims are without merit.

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-28) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-30) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Tuesday, September 13, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE